On respondent - cross-appellant's motion to enforce settlement agreement and motion to dismiss appeals, filed October 8; appellant - cross-respondent's response to cross-appellant's motion to enforce settlement agreement and motion to dismiss appeals, filed October 22; and appellant - cross-respondent's motion to strike respondent - cross-appellant's motion to dismiss appeals on ground of repeated references to confidential appellate settlement conference proceedings in respondent - cross-appellant's motion and rebuttal, filed November 18, 1999, motion to strike motion to dismiss denied; motion to enforce settlement and motion to dismiss granted; appeal and cross-appeal dismissed September 12, 2001

## In the Matter of the Marriage of

### Candace Dorrough REICH,
### nka Candace Dorrough Ball,
*Respondent - Cross-Appellant,*

*and*

### David Lee REICH,
*Appellant - Cross-Respondent.*

### 94-DO-0092; A104543

32 P3d 904

Carl William Hopp, Jr., for motion.

Jeffrey E. Potter and Gardner, Honsowetz, Potter, Budge & Ford, *contra*.

Before Landau, Presiding Judge, and Haselton and Armstrong, Judges.

LANDAU, P. J.

### LANDAU, P. J.

This case presents a potpourri of issues: whether this court has authority to enforce a settlement agreement entered into while the case is pending on appeal; whether evidence derived from an unsuccessful mediation is admissible in support of a motion to dismiss an appeal arising from a subsequent settlement; whether a revocation of an offer is effective if the revocation is communicated by facsimile transmission on the same day that the offeree deposited the acceptance in the mail; and whether the agreement of appellant and respondent to dismiss their respective appeal and cross-appeal is unenforceable because of a failure of consideration arising from the parties' concurrent agreement to waive child support.

We reach the following conclusions: This court has authority to consider whether to enforce a settlement agreement entered into while the case is pending on appeal to the extent that one of the terms of the settlement agreement provides for dismissal of all or part of an appeal; confidential mediation communications may not be offered as evidence in support of a motion to enforce a subsequent settlement agreement not arising from the mediation; the offeror's attempt to revoke the offer was ineffective because the revocation was transmitted to the offeree after the acceptance had been deposited in the mail; and the agreement is not unenforceable for the reason that the parties agreed to waive child support.

Appellant David Reich ("father") and cross-appellant Candace Ball ("mother") are the parents of two girls. During the marriage, mother was the primary wage-earner and father was the primary caretaker of the children. When they divorced several years ago, the judgment of dissolution of marriage provided for joint custody of the children. Father appealed because his parenting time did not include any midweek time. We determined that father was entitled to overnight parenting time on Wednesdays and remanded with instructions to amend the judgment of dissolution of marriage accordingly. *Reich and Reich*, 150 Or App 311, 946 P2d 319 (1997).

At the time of their separation and divorce, father and mother lived in the Madras, Oregon, area. After father's appeal, but before the case came back to the trial court on remand, mother remarried and moved to Walla Walla, Washington. Mother also ceased working outside the home. At about the time of the hearing on remand, father established a residence in Walla Walla.

Notwithstanding our remand to the trial court with instructions to provide for overnight Wednesday parenting time, the trial court declined to do so on the ground that, since our decision, there had been a substantial change of circumstances, namely, mother had married a physician with a substantial income, had ceased working, and now was the primary caretaker of the children. In lieu of granting Wednesday parenting time, the trial court gave father extended summer vacation parenting time. Father appealed and mother cross-appealed.

While the second appeal was pending, the parties participated in a mediation through this court's Appellate Settlement Conference Program. The day after the mediation, the mediator issued a four-page letter setting forth terms to which the mediator believed the parties had agreed. A week later, father indicated that he did not agree with the terms of the settlement. The case was removed from the settlement conference program and the appeal went forward.

The parties, through their respective attorneys, continued to negotiate. In September 1999, the parties again thought that they had arrived at a settlement, which included the amount of parenting time established by the trial court, but also provided that father would not pay child support. Father's attorney prepared a written settlement agreement. Father signed the agreement on September 11, 1999, and father's attorney mailed the agreement to mother's attorney, who, in turn, mailed it to mother. Mother signed the agreement on September 14, 1999, and mailed it to her attorney. On the afternoon of September 22, 1999, mother's attorney mailed the agreement to father's attorney. On the afternoon of the same day, father's attorney, by facsimile transmission, transmitted a letter to mother's attorney stating that father was withdrawing the offer.

Mother moved in this court to enforce the settlement agreement and to dismiss both father's appeal and her own cross-appeal.[1] Mother argued that the settlement agreement became enforceable either at the moment that the parties' respective attorneys agreed to the terms on behalf of their clients or when mother signed the agreement on September 14, 1999, well before father communicated any intent to revoke his offer.

Father opposed the motion to dismiss on these grounds: (1) The Court of Appeals previously has held that it does not enforce settlement agreements where the parties do not agree that there has been an agreement, and neither creation of the Appellate Settlement Conference Program nor the parties' participation in the program changes that holding; (2) with respect to the enforceability of the alleged agreement, as a matter of contract law, father revoked the offer to settle before mother was deemed to have accepted the offer; (3) even if there was an agreement, there was a failure of consideration, because mother's waiver of child support was a key term of the agreement and that provision is unenforceable as a matter of public policy.

Father also objected to mother including in her motion to dismiss information from the Appellate Settlement Conference Program because, under ORAP 15.05(6)[2] and

---

[1] Mother also has requested an award of attorney fees because father's reneging on the settlement agreement has caused her to incur additional attorney fees.

[2] ORAP 15.05(6) provides:

"Confidentiality

"(a) Program settlement conferences are subject to ORS 36.210 to ORS 36.238.

"(b) All materials submitted to the supervising judge or to the neutral, and all materials created by the supervising judge or the neutral that pertain to a program settlement conference and are not a part of the record on appeal shall be maintained separately from the record of the case. These materials shall not be subject to disclosure, except as the law may require or as the parties and the supervising judge may all agree. The materials referred to in this paragraph shall be destroyed at the time and in the manner prescribed by the policy adopted by the [State Court] Administrator pursuant to the Task Force on Records Retention.

"(c) The supervising judge or program director may request the parties or the neutral or both to provide oral and written evaluations of the case settlement process. The materials referred to in paragraph (6)(b), and oral and written evaluations of the case settlement process, may be used to evaluate the

ORS 36.222,[3] mediation communications are confidential. Father argued that, although confidentiality may be breached to enforce an agreement arising from a mediation, mother does not seek to enforce any agreement that arose from the court's settlement program.

After mother filed a reply to father's response, father moved to strike mother's motion to enforce the settlement agreement and to dismiss the appeal because the motion and mother's reply contained confidential mediation communications. Father also requested sanctions against mother's attorney for disclosing confidential mediation communications.

We determined that there were disputed issues of fact that needed to be resolved before the parties' motions could be ruled upon. We appointed a special master to conduct a hearing and make recommended findings of fact and

---

program. Any evaluation of the program, whether disseminated to the appellate courts or to the public, shall not disclose specific case identifying information."

[3] ORS 36.222 provides, in part:

"(1) Except as provided in ORS 36.220 to 36.238, mediation communications and mediation agreements that are confidential under ORS 36.220 to 36.238 are not admissible as evidence in any subsequent adjudicatory proceeding, and may not be disclosed by the parties or the mediator in any subsequent adjudicatory proceeding.

"* * * * *

"(4) In any proceeding to enforce, modify or set aside a mediation agreement, confidential mediation communications and confidential mediation agreements may be disclosed to the extent necessary to prosecute or defend the matter. At the request of a party, the court may seal any part of the record of the proceeding to prevent further disclosure of mediation communications or agreements to persons other than the parties to the agreement.

"* * * * *

"(7) The limitations on admissibility and disclosure in subsequent adjudicatory proceedings imposed by this section apply to any subsequent judicial proceeding, administrative proceeding or arbitration proceeding. The limitations on disclosure imposed by this section include disclosure during any discovery conducted as part of a subsequent adjudicatory proceeding, and no person who is prohibited from disclosing information under the provisions of this section may be compelled to reveal confidential communications or agreements in any discovery proceeding conducted as part of a subsequent adjudicatory proceeding. Any confidential mediation communication or agreement that may be disclosed in a subsequent adjudicatory proceeding under the provisions of this section may be introduced into evidence in the subsequent adjudicatory proceeding."

conclusions of law. The special master conducted a hearing and, thereafter, filed his report.

■     We address, first, father's motion to strike mother's motion to dismiss. Father moved to strike the motion to dismiss on the ground that that motion and mother's reply included references to confidential mediation communications.[4] Attached to mother's motion to dismiss were: (1) a copy of the four-page letter prepared by the neutral in the mediation proceeding held pursuant to this court's Appellate Settlement Conference Program setting forth what the neutral believed to be the terms of a settlement to which mother and father had agreed; (2) a copy of the neutral's letter to the Appellate Settlement Conference Program Director informing the director that the mediation had been successful; and (3) a copy of a second letter from the neutral to the parties stating that father had had "second thoughts" about the agreement. In addition, the body of mother's motion to dismiss and her reply referred to father having had "second thoughts" about the agreement.

Mother opposed father's motion to strike her motion to dismiss and, at the hearing before the special master, sought to introduce additional evidence arising from the mediation. The special master sustained father's objection to admission of the evidence and, in his report, the special master recommended that the court determine that the mediation communications are inadmissible.

Mother contends that, under ORS 36.222(4),[5] otherwise confidential mediation communications are admissible

---

[4] Although father's motion cites no authority for the relief he seeks, presumably he relies on ORS 36.222(1):

"Except as provided in ORS 36.220 to 36.238, mediation communications and mediation agreements that are confidential under ORS 36.220 to 36.238 are not admissible as evidence in any subsequent adjudicatory proceeding, and may not be disclosed by the parties or the mediator in any subsequent adjudicatory proceeding."

[5] ORS 36.222(4) provides:

"In any proceeding to enforce, modify or set aside a mediation agreement, confidential mediation communications and confidential mediation agreements may be disclosed to the extent necessary to prosecute or defend the matter. At the request of a party, the court may seal any part of the record of the proceeding to prevent further disclosure of mediation communications or agreements to persons other than the parties to the agreement."

for the limited purpose of enforcing a settlement agreement, and she contends that she has offered the mediation communications in question here for that purpose. We reject that contention because mother did not offer the mediation communications for the purpose of enforcing any agreement that arose from the mediation. Rather, mother offered the mediation communications for the purpose of enforcing a settlement agreement entered into by the parties themselves long after the attempted mediation failed. Confidential mediation communications may not be offered for that purpose. However, we decline to strike mother's motion to dismiss altogether merely because the motion includes some inadmissible material. Rather, we strike the confidential mediation communications and references to those communications included in the motion to dismiss and the reply, and we disregard that information for the purpose of deciding mother's motion to dismiss.[6]

With respect to father's request for sanctions, although the special master concluded that the mediation communications were not admissible, he recommended that sanctions not be imposed against mother or her attorney, because mother's attorney had a colorable argument for the admissibility of the mediation communications. Father argues at length that mother's violation of ORS 36.222 was so egregious that mother's motion to dismiss should be struck and sanctions imposed; otherwise, the rule protecting the confidentiality of mediation communications will be rendered meaningless. Although we disapprove of mother's counsel's attempt to interject confidential mediation communications into these proceedings, we concur with the special master's recommendation against imposing a monetary sanction against mother or her attorney.

---

[6] In any event, it appears to us that the evidence from the unsuccessful mediation is immaterial. Father does not dispute that, after the mediation was over, the parties continued to negotiate on their own and that he made an offer to settle the parties' ongoing dispute. Father also does not dispute that mother attempted to accept that offer and that he attempted to revoke that offer. The legal questions are whether father's attempt to revoke the offer was valid and, if not, what was the effect of the settlement agreement. Whether father did or did not agree to something in the course of the mediation and whether he did or did not back out of something he might have agreed to at that time is of no assistance in resolving those issues.

Turning to mother's motion to dismiss, that motion depends on the existence of a settlement agreement. Father contends that there is no settlement agreement and argues that this court has no authority to enforce a settlement agreement if one of the parties denies the existence of a settlement agreement. Father relies on *Guinasso v. Pacific First Federal*, 95 Or App 233, 769 P2d 212 (1989). In that case, after this court had rendered a decision on the merits, the plaintiffs filed a petition for attorney fees. While a decision on the plaintiffs' petition for attorney fees was pending, the parties were negotiating the possibility of a settlement agreement regarding attorney fees. The court decided to deny the petition for attorney fees. The court's order embodying that decision issued at about the same time that the parties entered into a settlement agreement providing for payment of some attorney fees. The defendant attempted to repudiate that agreement; the plaintiffs petitioned for reconsideration of the order denying attorney fees and moved for enforcement of the settlement agreement. In denying the plaintiffs' petition and motion, the court said:

> "The effect of a settlement of which we are informed before we issue a decision is to eliminate the subject for a decision. Our usual disposition after a settlement is to dismiss the appeal, not to render a decision that reflects the parties' agreement. Stated differently, we do not enforce settlements; we desist from deciding cases when settlements are reached. * * * The agreement may be independently enforceable in a contract action, but its enforcement is not ancillary or incidental to our ruling on an appeal or a petition for attorney fees. * * *

> "* * * The net effect, in the light of [the] defendant's communicated repudiation, is that the parties do not agree that there is a settlement and that the petitions for attorney fees and for reconsideration of their denial are not before us for decision. There is no settlement for purposes of our authority to rule. Whether there is an enforceable contract is an issue that must be raised initially in another forum."

*Guinasso*, 95 Or App at 235-36.

We must retreat from the breadth of the holding of *Guinasso*, at least to the extent that a purported settlement

agreement entered into while the case is pending on appeal provides for dismissal of an appeal or appeals. Only this court (or the Supreme Court on review of a decision of this court) can decide whether to dismiss an appeal; that decision cannot be remanded to the circuit court. The settlement agreement signed by both parties provides for dismissal of father's appeal and mother's cross-appeal. This court must decide in the first instance whether to enforce the settlement agreement to the extent that the agreement provides for dismissal of the parties' appeals. Father contends that the settlement agreement in general, and the mutual dismissal of appeals provision in particular, are not enforceable on a variety of grounds. Because the issue whether the appeals should be dismissed is inextricably bound up with enforceability issues, necessarily, in this case, this court must decide the enforceability issues.

■■■ Father contends, first, that the settlement agreement is not enforceable because he revoked his offer to settle before mother accepted it. Resolution of that contention depends on standard contract law principles:

> "Unless the offer provides otherwise, * * * an acceptance made in a manner and by a medium invited by an offer is operative and completes the manifestation of mutual assent as soon as put out of the offeree's possession * * *."

*Restatement (Second) of Contracts* § 63 (1979).

> "Once the offeree has exercised his power to create a contract by accepting the offer, a purported revocation is ineffective as such. Where an acceptance by mail is effective on dispatch, for example, it is not deprived of effect by a revocation subsequently received by the offeree."

*Restatement (Second) of Contracts* § 42 cmt c (1979); *accord Shaw Wholesale Co. v. Hackbarth,* 102 Or 80, 92, 198 P 908 (1921) (as to offers communicated by mail, the offer is accepted if the acceptance is duly addressed and mailed before knowledge of any retraction of the offer).

■     Here, the medium chosen by father's attorney to transmit the offer invited mother to communicate her acceptance by mail. Mother's attorney responded in kind by communicating her acceptance by mail. It happened, in this case, that on the afternoon of the same day that a staff member of mother's attorney placed the agreement signed by mother in the mail, father's attorney, by facsimile transmission, attempted to revoke the offer. The factual question is, which one occurred first, deposit of the acceptance in the mail or receipt of the revocation?

After considering the evidence of the circumstances under which mother's attorney mailed the acceptance and the circumstances under which father's attorney faxed the revocation, the special master found that it was more likely than not that a staff member of mother's attorney deposited the acceptance of father's offer in the mail before father's attorney faxed the letter revoking the offer. We have independently reviewed the evidence and concur with that finding.[7] Because mother is deemed to have accepted father's offer before father revoked it, we conclude that the parties entered into a settlement agreement.

Father next argues that, even if the parties attempted to enter into a settlement agreement, the agreement to dismiss the parties' respective appeal and cross-appeal is not enforceable because that provision is not severable from another provision for which there was a failure of consideration. That argument arises from these two provisions of the agreement:

"(1)   David will dismiss his appeal and Candace will dismiss her cross-appeal, case CA A104543, without costs or attorney fees awarded to anyone. Upon issuance of the appellate judgment, both parties will stipulate to a modification of their divorce judgment according to the terms of this settlement.

"* * * * *

---

[7] Although the court is assisted by the special master who conducted the hearing, assembled the record, and had whatever opportunity telephonic testimony affords to evaluate the reliability and credibility of the witnesses, this court ultimately is responsible for making its own findings.

"(11)  David will pay no child support and Candace will forego seeking any support. The parties make this agreement as a compromise of many disputed factors, including the parties' incomes, potential incomes, incomes of spouses and partners, expenses incurred by David in transporting the children, and other factors. They acknowledge that, under this agreement, the children are more than adequately provided for."

Father further argues that the latter is unenforceable as being in violation of public policy, that enforcement of the former cannot be severed from the latter, and therefore, the provision for mutual dismissal of the appeals is unenforceable.

At a minimum, father argues that the case should be remanded to the trial court for a determination of the enforceability of part (11) of the parties' agreement before this court decides whether to dismiss the parties' appeals. Father relies on the first sentence of ORS 19.410(3),[8] which provides that, when a case is pending on appeal, the trial court has authority to enter orders and judgments as necessary to implement a settlement entered into during that time. Father urges this court to hold the appeal in abeyance while the parties litigate in the trial court the enforceability of the settlement agreement. Father asserts that if the trial court rejects mother's attempt to waive child support, then there will have been a failure of consideration and the parties' mutual agreement to dismiss their respective appeal and cross-appeal will have been voided. He concludes that if this court enforces the first provision of the settlement agreement and dismisses his appeal, he will have lost any hope of getting the additional parenting time to which he believes he is entitled, with no assurance that he will get that which he

---

[8] ORS 19.410 provides:

"(1) An appellate court may dismiss an appeal at any time if the parties to the appeal stipulate to the dismissal.

"(2) Dismissal of an appeal shall operate as an affirmance of the judgment being appealed if the appellate court so directs in the order of dismissal.

"(3) If the parties to an appeal settle all or part of the matter on appeal, the trial court has jurisdiction to enter any orders or judgments that may be necessary to implement the settlement. If the settlement disposes of all issues on appeal, the appellate court may dismiss the appeal. If the settlement disposes of part of the issues on appeal, the appellate court may limit the scope of the appeal to the issues not disposed of by the settlement."

bargained for, namely, termination of his child support obligation.

■      There is nothing within the four corners of the settlement agreement itself that indicates that the enforceability of the first part of the agreement providing for mutual dismissal of the parties' appeals is dependent on the enforceability of part (11) providing for a waiver of child support. Although father and his attorney testified at the hearing before the special master that the "no child support" provision was a "deal-breaker," the agreement is not structured in the manner father asserts. Part (1) of the settlement agreement contemplates that the appeals will be dismissed first, and only after issuance of the appellate judgment will the parties present the agreement to the trial court in an effort to persuade the trial court to modify the judgment of dissolution of marriage. To do as father suggests—hold the appeal in abeyance and remand the case to the trial court to determine if the trial court will accept the waiver of child support provision—would be inconsistent with the parties' agreement.

Father argues that the court should not "sever" the agreement to dismiss the appeal and cross-appeal provision of the agreement from the provision that father will not pay child support. However, it is not "severing" the agreement to implement it according to its very terms: first dismissal of the appeals, followed by presentation to the trial court of the parties' agreement for modifying the judgment.

Father asserts that he cannot get the benefit of his bargain because the trial court cannot accept mother's waiver of child support and, if the trial court does not accept the waiver of child support, that being an essential term of the settlement agreement, then the agreement fails, including the agreement to dismiss the appeal and cross-appeal. The authorities father cites emphasize only the *presumption* that the noncustodial parent will pay child support. The administrative rule for determining child support acknowledges that the presumptive amount of child support can be rebutted by evidence of various factors, including:

> "(M)   Prior findings in a Judgment, Order, Decree or Settlement Agreement that the existing support award was

made in consideration of other property, debt or financial awards."

OAR 137-050-0330(2)(a). As mother argued before the special master, this rule is consistent with *Mock and Sceva*, 143 Or App 362, 923 P2d 1310 (1996) (the parties' agreement establishing an amount of child support different from the presumptive amount is not *ipso facto* void, but may be considered by the trial court and incorporated into whatever award the court makes); *Petersen and Petersen*, 132 Or App 190, 888 P2d 23 (1994) (the child support guidelines do not contain an exclusive list of factors that a court may consider in determining whether to award child support and the amount thereof, but, rather, the court may consider the parties' agreement); and *Wood and Wood*, 106 Or App 192, 806 P2d 722 (1991) (parties by agreement cannot extinguish the trial court's authority to impose a child support obligation). The parties' agreement is not dependent on the trial court's acceptance of the waiver of child support, rather, the agreement merely reflects that *the parties* agree that father should not be required to pay child support and that mother will not seek child support. The trial court is not bound by that agreement, but the trial court may consider the agreement in determining whether to continue father's child support obligation.

The parties could have structured their settlement to provide that the stipulation would have been presented to the trial court while the case is pending on appeal and to provide that dismissal of their respective appeal and cross-appeal would be dependent on the trial court relieving father of his child support obligation. But that is not what father offered, nor is it what mother accepted. The settlement agreement is not rendered unenforceable altogether merely because the trial court may decide not to relieve father of any child support obligation. The settlement agreement requires only that mother stipulate that father will pay no child support and that she will not seek child support. As far as the record before this court demonstrates, mother stands ready to so stipulate and to refrain from seeking child support. Presumably, the circuit court will consider that agreement when it rules on the question whether to eliminate father's child

support obligation. That is all father is entitled to under the settlement agreement.

We conclude that part (1) of the settlement agreement is enforceable and requires dismissal of father's appeal and mother's cross-appeal.

Motion to strike motion to dismiss denied; motion to enforce settlement and motion to dismiss granted; appeal and cross-appeal dismissed.