On respondent's motion to dismiss appeal filed January 10; appellant's response to respondent's motion to dismiss appeal filed March 28; respondent's reply on motion to dismiss appeal filed April 4; motion to dismiss appeal and appeal held in abeyance pending trial court's entry of an amended domestic relations order September 26, 2007

## In the Matter of the Marriage of

### Diane K. BALDWIN,
*Petitioner-Respondent,*

*and*

### Karen BALDWIN,
personal representative of John H. Baldwin,
*Respondent-Appellant.*

### Lane County Circuit Court
159301198; A130180

168 P3d 1233

Jeffrey E. Potter for motion.

Martin M. Fisher and Ackley Melendy & Kelly, LLP, *contra*.

Before Wollheim, Presiding Judge, and Schuman and Rosenblum, Judges.

WOLLHEIM, P. J.

## WOLLHEIM, P. J.

Respondent Diane Baldwin moves to dismiss this appeal based on a settlement agreement between the parties. Appellant Karen Baldwin opposes the motion to dismiss the appeal, contending that there is not a final settlement agreement. We conclude that the parties entered into an enforceable agreement to settle this matter, which included an agreement to dismiss the appeal. The dismissal of the appeal is contingent upon the trial court entering an amended domestic relations order consistent with the parties' agreement. Accordingly, we hold in abeyance the motion to dismiss the appeal and the appeal pending the trial court's entry of such an order, after which time we will grant respondent's motion and dismiss the appeal.

This appeal arises from a dissolution of marriage proceeding between Diane Baldwin and John Baldwin. In 1993, the trial court entered a judgment of dissolution and a domestic relations order, which divided the then-present value of John Baldwin's PERS benefits. The PERS benefits were equally divided between Diane and John. In 1994, John Baldwin married Karen Baldwin. John died in 2005, before his PERS benefits became payable. Karen was appointed personal representative of John's estate.

A dispute arose between Diane and Karen regarding the distribution of the marital portion of John's PERS benefits. Karen, as personal representative, requested clarification of the 1993 domestic relations order. Following trial, the trial court denied the request for clarification and, as a result of that denial, Diane was entitled to 100 percent of the marital portion of John's PERS benefits. Karen timely appealed from the trial court's order.

The case was referred to the Appellate Settlement Conference Program. ORAP 15.05.[1] Although efforts to settle through the program were not successful, the parties' attorneys continued to negotiate settlement terms.

---

[1] The proceedings before the Appellate Settlement Conference Program are confidential. ORAP 15.05(6) and ORS 36.220 to 36.238. Normally, Court of Appeals judges are not aware of which cases have been considered by the program. This case is an exception.

We describe the parties' post-settlement-conference negotiations in some detail. On June 9, 2006, Diane's attorney e-mailed a "final" settlement proposal to Karen's attorney. That proposal stated that Karen, or her assignee, would receive one-third of the disputed amount and Diane would retain two-thirds of the disputed PERS benefits. In addition, Diane agreed to make the settlement fully retroactive. On June 13, 2006, Karen's attorney e-mailed Diane's attorney that Diane's June 9, 2006 offer was "acceptable to Karen" and that a formal acceptance would follow. On June 20, 2006, Diane's attorney e-mailed Karen's attorney confirming Karen's acceptance of Diane's June 9 offer. On June 26, 2006, Karen's attorney wrote Diane's attorney "confirm[ing] that we have agreed to settle the parties' dispute about the distribution of John Baldwin's PERS account * * *." After noting that the domestic relations order would need to be amended, Karen's attorney wrote that, "assuming that the rest of the deal is consummated, we will agree to dismiss the appeal * * *."

A different attorney was responsible for drafting an amended domestic relations order. Over the next few months, the attorneys exchanged e-mails regarding the proposed order. On August 2, 2006, Karen's attorney wrote Diane's attorney, expressing some concern regarding paragraph eight of the proposed order. However, Karen's attorney wrote that it was Diane's attorney's "call" regarding paragraph eight, and that "the rest of the order looks okay to me." That same day, Diane's attorney wrote to Karen's attorney regarding the changes to the proposed order. On September 20, 2006, Karen's attorney wrote Diane's attorney stating, "[p]lease let me know whether the present DRO will be acceptable. We also want to get this wrapped up—or not—as soon as possible." On November 14, 2006, Diane's attorney e-mailed Karen's attorney stating that Diane was ready to sign the proposed order, with two exceptions. The exceptions concerned paragraph eight regarding the manner and timing of the retroactive payment, and paragraph nine regarding taxability. According to Diane's attorney, the retroactive payment issue was resolved, and he suggested deleting paragraph nine. Diane's attorney asked Karen's attorney if the two changes were acceptable. There was no response to

Diane's attorney's e-mail. On December 5, 2006, Karen filed a substitution of attorney. Karen's new attorney informed Diane's attorney that Karen did not want to settle and that she wanted the appeal to go forward.

Diane moves to dismiss the appeal on the ground that the parties had entered into a binding agreement that included an agreement to dismiss the appeal. Karen opposes the motion on the grounds that there was no final settlement and that, assuming that there was a final settlement, the appeal cannot be dismissed until the amended domestic relations order is entered. Therefore, Karen contends, the motion to dismiss her appeal should be denied.

The initial issue is whether the parties agreed to a final settlement of this matter. A settlement is a contract. *Hughes v. Misar*, 189 Or App 258, 264, 76 P3d 111 (2003). Whether a contract exists is a question of law. *Dalton v. Robert Jahn Corp.*, 209 Or App 120, 132, 146 P3d 399, *rev den*, 342 Or 416 (2006). As often stated, Oregon subscribes to an objective theory of contracts, which means that whether the parties entered into a contract does not depend on the parties having the same subjective understanding of the agreement. Rather, it depends on whether the parties agreed to the same express terms of the contract. *Newton / Boldt v. Newton*, 192 Or App 386, 392, 86 P3d 49, *rev den*, 337 Or 84 (2004).

On these facts, we have no difficulty concluding that the parties agreed to settle this matter. The June 2006 exchange of e-mails between the parties' attorneys constituted the making of a contract. Diane's attorney's letter of June 9 to Karen's attorney was an offer, and Karen's attorney's response was an acceptance of that offer. Karen's attorney even wrote that a more formal "acceptance" would follow, and Karen's attorney's June 26, 2006, letter was that formal acceptance. The exchange of e-mails between the attorneys for the parties demonstrated the requisite agreement on the same essential terms of the settlement.

The lack of a signed agreement is not dispositive; "[w]hen parties agree on the essential terms of a contract and there is nothing left for future negotiations, the fact that they also intended there to be a future writing that expresses their

agreement more formally does not affect the immediately binding nature of the agreement." *Hughes*, 189 Or App at 264; *see also Kaiser Foundation Health Plan v. Doe,* 136 Or App 566, 903 P2d 375 (1995), *modified on recons,* 138 Or App 428, 908 P2d 850, *rev den,* 324 Or 394 (1996) (Where attorneys reached agreement on the essential terms of a settlement and the defendant accepted those terms, the defendant's acceptance was sufficient to make the settlement immediately binding.).

A related issue concerns the lack of agreement on certain terms. If those terms are material then there is no contract. "A term is 'material' to an enforceable agreement when it goes to the substance of the contract and, if breached, defeats the object of the parties in entering into the agreement." *Johnstone v. Zimmer,* 191 Or App 26, 34, 81 P3d 92 (2003) (citation omitted). The two material terms in this contract were (1) the portion, if any, of the PERS benefits that Karen should receive, and (2) the extent, if any, to which the payments would be retroactive. Karen and Diane agreed as to both material terms. Karen's argument, that Diane's attorney's November 14, 2006, e-mail regarding two additional changes demonstrates that the parties did not reach a settlement, is not persuasive. Those proposed changes regarding the manner and timing of the retroactive payment and taxation are, at best, subordinate details of performance. *Dalton,* 209 Or App at 139-40.

Karen's new attorney's subsequent contact with Diane's attorney conveying Karen's intent to withdraw from the settlement was an attempt to repudiate the contract formed on Karen's behalf by her former attorney. However, once Karen had exercised the power to create a contract by accepting the offer made by Diane, the purported repudiation was ineffective. The settlement agreement is valid.

The settlement agreement provides for dismissal of this appeal once the "rest of the deal is consummated." The court has authority to decide enforceability of such an agreement. *Reich and Reich,* 176 Or App 442, 444, 32 P3d 904 (2001). The "rest of the deal" needs to be consummated before this court dismisses the appeal. The trial court must enter an

amended domestic relations order consistent with the parties' agreement.

Accordingly, we will hold the motion and the appeal in abeyance pending the trial court's entry of an amended domestic relations order consistent with the parties' agreement, at which time we will dismiss the appeal.

Motion to dismiss appeal and appeal held in abeyance pending trial court's entry of an amended domestic relations order.