Argued and submitted May 15, judgment dismissing fraud claim reversed
and remanded; judgment for indemnity reversed; judgment for attorney fees for
installment contract purchaser remanded for reconsideration; otherwise affirmed
September 13, 1989

ARTER et al,
*Respondents,*

*v.*

SPATHAS et al,
*Respondents,*
*and*

SKOURTES et al,
*Appellants.*

(A8511-07160; CA A46634 (Control))

SKOURTES et al,
*Appellants,*

*v.*

SPATHAS et al,
*Respondents.*

(A8509-05567; CA A47197)
(Cases Consolidated)

779 P2d 1066

Marvin S. Nepom, Portland, argued the cause and filed the briefs for appellants.

John F. Reynolds, Portland, argued the cause and filed the brief for respondents Paul W. Arter and Theodora Arter.

Vincent A. Deguc, Beaverton, argued the cause and filed the brief for respondents John T. Spathas, Patricia A. Spathas, Thomas John Spathas and Spathco, Inc.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Deits, Judge.

RICHARDSON, P. J.

## RICHARDSON, P. J.

These two causes of action concerning the sale of two Dairy Queen restaurants were consolidated for trial and on appeal. We affirm in part and reverse in part.

Both restaurants were owned by Paul and Theodora Arter (Arter), who sold them on installment contracts to John and Patricia Spathas (Spathas) in January, 1980. The businesses were located on land owned by and leased from entities that are not parties to these actions, and the leases were assigned by Arter to Spathas. In April, 1984, Spathas executed an earnest money agreement with William and Marianelly Skourtes (Skourtes) for the sale of both businesses. The agreement was conditional, *inter alia,* on approval by the real property lessors to an assignment of the leases, approval by Arter to assignment of the installment contract obligations and approval of the franchisor, Dairy Queen of Pacific Northwest, to transfer of the franchises. Skourtes took possession in October, 1984, began operating the restaurants and, on December 15, executed assignment contracts by which they agreed to assume the Spathas' obligations under the sale contracts with Arter and the obligations on the leases. In the early part of 1985, Skourtes began missing payments on the leases and those due to Arter on the sale contracts. They ultimately closed the businesses in July, 1985, and tendered the keys to Spathas in an attempt to rescind the transactions. Spathas rejected the tender of rescission.

Skourtes filed an action against Spathas (Skourtes case) in which they sought rescission and restitution on the basis of allegations that Spathas had not obtained the necessary consents and had made false representations regarding the financial health of the businesses. They also sought damages for fraud, based on allegedly false representations. Spathas filed an answer containing affirmative defenses and "counterclaims" for attorney fees and for breach of the assignment agreements in which they sought $250,000 damages, plus "any amounts whatsoever for which they may be held liable" to Arter.

Arter then filed a separate action against Skourtes and Spathas (Arter case) for breach of the contracts between Arter and Spathas that they alleged had been assigned to Skourtes. Arter sought the balances due and attorney fees as

provided in the contracts. Skourtes and Spathas answered Arters' complaint and incorporated their pleadings in the Skourtes case as cross-claims against each other in the Arter case. Consequently, the claims and counterclaims in the Skourtes case are the same as the cross-claims in the Arter case.

The cases were consolidated for trial. Before trial, the trial court required Skourtes to elect between the claim for rescission and restitution and the claim for fraud. The court ruled that the claims were inconsistent and that Skourtes could not proceed to try both of them. They objected but decided to proceed on the equitable claims for rescission and restitution. After trial to the court on the consolidated cases, the court gave judgment for Arter in the Arter case against Spathas and Skourtes for contract damages and for foreclosure of his security interest in the businesses. After a hearing on Arters' cost bill, the court gave Arter a separate judgment for attorney fees and costs.

The court then reserved decision on the cross-claims involving Spathas and Skourtes in the Arter case and the identical claims in the Skourtes case. After further briefing, the court issued a judgment on the cross-claims in the Arter case and a judgment in the Skourtes case. Both judgments awarded indemnity to Spathas from Skourtes for any amounts that Spathas was required to pay to Arter. The court also awarded Spathas attorney fees in a separate judgment. All other claims, cross-claims and counterclaims were dismissed.

Skourtes appealed from all three judgments on the various claims and the two judgments for attorney fees. We dismissed the appeal of the judgment for damages in favor of Arter, because it was not properly perfected. Consequently, Skourtes properly appeals only the judgment for attorney fees in favor of Arter, the judgment in the Arter case in favor of Spathas on the cross-claims against Skourtes, the judgment in the Skourtes case in favor of Spathas and the judgment in favor of Spathas for attorney fees.

■     Skourtes first contends that the court erred by requiring them to elect the claims on which they wished to proceed. The doctrine of election between inconsistent remedies does not require an election until the matter has gone to judgment. *Godat v. Waldrop,* 78 Or App 374, 379, 717 P2d 180,

*rev den* 302 Or 86 (1986); *Family Bank of Commerce v. Nelson,* 72 Or App 739, 697 P2d 216, *rev den* 299 Or 443 (1985). A party need only choose between or among inconsistent *remedies,* not inconsistent claims or theories of recovery. ORCP 16C specifically allows inconsistent claims to be pleaded and tried. The court erred in requiring the election and in dismissing the fraud claim.

Skourtes next contends that the court erred by striking the allegations that Spathas made a material misrepresentation that "the Dairy Queen operations realized an annual depreciation of $25,107." That allegation was made as one of the bases for the claim for rescission and restitution, as well as for the claims for fraud damages. After Skourtes had rested, Spathas moved to "strike" the allegation on the basis that it had not been proven. The court found that there was evidence that the representation was made and that it may have been incorrect, but concluded that it was not a material representation. The court's reasoning appears to be that the asset depreciation that a person may use for tax purposes is derived after the sale and from the buyer's cost base. Mr. Skourtes testified that the representation was made in relation to the net profit and cash flow of the business. It was important, Skourtes claimed at trial, to have a profit or cash flow sufficient to discharge monthly obligations related to some unrelated real property transactions.

Spathas argues that the representation was not material and, additionally, Skourtes, as experienced business owners, could not have been misled by the information or used it as a basis for deciding to purchase the businesses. Spathas appears to contend that the court was correct, because Skourtes was not entitled to rely on the depreciation figure. The court did not get to that issue, and neither do we. The allegation was removed from the case on the narrower ground of materiality.

We disagree with the court's ruling. A depreciation figure used by the seller may have limited utility in isolation; however, the evidence shows that the information was provided as part of the basis for Spathas' historical profit figures and the projection of the businesses' earnings. Certainly, the profit of a business and the method of calculating it is material to a decision to purchase. Skourtes testified that they would

not have purchased the businesses if the true profit picture had been disclosed.

■      Although the alleged representation was material to the purchasers' decision, we conclude that the court's decision does not mandate reversal of the judgment on Skourtes' second claim for relief. That claim included, in addition to the stricken allegation, that Spathas had operated the businesses at a profit; that the businesses yielded a positive cash flow of not less than $900 per month; that food costs were about 42 percent of sales; and that the businesses were producing an annual net profit of not less than $30,000. The trial court found against Skourtes on all of those allegations, and that ruling is not assigned as error. Even if the allegation that the depreciation was misrepresented were proven, it would not independently support the claim for rescission and restitution. Consequently, the error does not require reversal.

■      In the third assignment, Skourtes contends that the court erred in finding that Spathas had satisfied conditions precedent required by the earnest money contracts. The transactions for the two businesses were contingent on consents from the lessors to assignment of the leases, from Arter to assignment of the installment purchase contract and from the franchisor to assignment of the franchises. One of the leases had expired, and Skourtes concedes that consent as to that lease was not required.

The trial court found that the requisite consents were either provided or would have been provided if Skourtes had not become delinquent in payments on the leases and to Arter on the underlying contracts. Skourtes had gone into possession of the restaurants and were operating them in October, 1984, before the transactions closed in December. They were obligated to make the lease payments and the payments to Arter. They defaulted on those payments, and the lessee and Arter conditioned their consents on those obligations being brought current. Consent to assignment of the franchises awaited only the payment of a $350 transfer fee. Under these circumstances, the lack of documented consents was attributable to Skourtes' failure to make payments, and they cannot base their claims on their own defaults.

Skourtes next contends that the court erred in awarding "judgment of indemnity against [Skourtes] for any amount

paid by [Spathas] to Arter" in the Arter case. Their principal claim is that indemnity was not pleaded in either case. Spathas pleaded, in both cases, that Skourtes had breached the contract and that they were damaged. They prayed for $250,000 in damages or "for any amounts whatsoever for which they may be held liable" in the Arter case. They conceded at oral argument in this court that indemnity had not been properly pleaded but argued that the court properly fashioned a remedy in equity after finding that both Spathas and Skourtes were liable to Arter on the underlying contract.

■      The issue of indemnity only arose because the trial court gave that type of award at the close of all the evidence. At that time, Skourtes objected that it was not pleaded. Indemnity is not a cause of action but is a remedy based on a legal theory of recovery which specifies the reason why one party should hold the other harmless. *Freeport Investment Co. v. R. A. Gray & Co.*, 94 Or App 648, 767 P2d 83, *rev den* 308 Or 33 (1989). Spathas did not plead a basis for that remedy, and the judgment for indemnity is not based on the pleadings. *See Aetna Casualty & Surety Co. v. OHSU*, 96 Or App 292, 773 P2d 1320 (1989). We reverse the judgment in each case in favor of Spathas for indemnity.

■      Skourtes' final assignment relating to Spathas is that the court erred by awarding Spathas attorney fees. They make two arguments: first, the judgments in favor of Spathas were in error and that they were not entitled to attorney fees, because they should not have prevailed; second, that the right to attorney fees was not properly pleaded. The latter ground was not raised below, and we decline to address it on appeal, although we would probably agree that the mere mention of attorney fees in the pleadings does not satisfy ORCP 68C(2). The other ground is essentially that Spathas should not have prevailed and is not entitled to attorney fees. We reverse only the judgments for indemnity and remand the case for trial on Skourtes' fraud claim. Because we are unable to determine the basis of the attorney fees award to Spathas, and in the light of our reversal of one part of the judgment, the trial court should reconsider the attorney fees award to Spathas on remand.

■      Skourtes also appeals the judgment for attorney fees in favor of Arter. They argue that there was no valid assignment to them of the sales agreement between Arter and

Spathas and they were therefore not bound by the provision in the contract for attorney fees. They argue that, even though their appeal of the judgment for breach of contract was dismissed, they can raise the propriety of that judgment in their objection to the request for attorney fees. We disagree. Arter prevailed in the action and was entitled to attorney fees under the contract. ORS 20.096. The judgment making them the prevailing party is final, and Skourtes cannot go behind it to attack its bases.

Judgment dismissing Skourtes' fraud claim reversed and remanded; judgment for indemnity in favor of Spathas reversed; judgment for attorney fees in favor of Spathas remanded for reconsideration; otherwise affirmed.