Argued and submitted January 28, affirmed June 9, petition for review denied October 14, 2004 (337 Or 547)

## H. Gerald BIDWELL,
*Appellant,*

*v.*

## Marilyn BAKER,
*Respondent.*

## 0110-10985; A119334

91 P3d 793

James T. McDermott argued the cause for appellant. With him on the briefs were Dwain M. Clifford and Ball Janik LLP.

Mark A. Johnson argued the cause for respondent. With him on the brief was Bennett, Hartman, Morris & Kaplan, LLP.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

BREWER, J.

**BREWER, J.**

Plaintiff appeals from a trial court judgment dismissing this action for the enforcement of an alleged oral settlement agreement concerning a property award in a judgment dissolving the parties' marriage. The trial court dismissed the action on defendant's motion for summary judgment after determining that, as a matter of law, plaintiff could not enforce the alleged agreement because he previously had pursued an inconsistent substantive right. We affirm.

This is our third occasion to write on the parties' protracted disputes arising out of their marital dissolution. In 1999, the circuit court dissolved the parties' 11-year marriage, awarding to defendant as part of the property division a money judgment of $17,817,297 for her share of plaintiff's business. Plaintiff appealed the property division, contending that, rather than awarding defendant a compensating judgment, the trial court should have ordered a sale of the business and a proportionate distribution of the net proceeds.

According to plaintiff, on October 3, 2000, the parties reached an oral agreement settling the disputed issues in that appeal. Plaintiff asserts that defendant agreed, in consideration of plaintiff's promise to dismiss his appeal, to accept a discount of approximately $4.5 million on the money judgment. On October 4, 2000, before the alleged settlement agreement had been memorialized in writing, this court affirmed the judgment of the circuit court. *Bidwell and Bidwell*, 170 Or App 239, 12 P3d 76 (2000), *adh'd to on recons*, 172 Or App 292, 18 P3d 465, *rev den*, 332 Or 305 (2001). Plaintiff sought defendant's assurance that she intended to be bound by the alleged oral settlement. On October 5, 2000, defendant's attorney informed plaintiff's attorney that defendant did not agree that there had been a settlement, and defendant rebuffed plaintiff's attempts to tender performance.

On November 3, 2000, plaintiff filed a motion for reconsideration of our opinion on appeal from the dissolution judgment. We allowed reconsideration and entertained plaintiff's argument that, in affirming the trial court, we had

departed from previous case law holding that the sale of a nondivisible asset is the remedy of choice in dissolution cases. Pending our reconsideration, plaintiff filed an action in the United States District Court for Oregon on January 10, 2001, seeking to enforce defendant's performance of the alleged oral settlement agreement. On January 31, 2001, we adhered to our original opinion, holding that, under the circumstances of the case, a forced sale of the business was not preferable to the trial court's disposition. On defendant's petition, in yet another written opinion, we awarded defendant attorney fees. *Bidwell and Bidwell*, 173 Or App 288, 21 P3d 161 (2001). Plaintiff sought review of our decision on the merits in the Supreme Court, which denied review on June 26, 2001. *Bidwell and Bidwell*, 332 Or 305, 27 P3d 1045 (2001). At no time after our original opinion of October 4, 2000, did plaintiff notify this court of the existence or terms of the alleged settlement agreement.

On July 27, 2001, the federal district court dismissed the federal action for lack of subject matter jurisdiction. On October 25, 2001, after the appellate judgment in the dissolution action had become final, plaintiff filed this action in Multnomah County Circuit Court to enforce the alleged settlement agreement. Defendant filed a motion to dismiss the action under ORCP 21 A(8), and she also filed a motion to consolidate the action with the dissolution case. The court denied both motions. Citing *Spady v. Graves*, 307 Or 483, 488-89, 770 P2d 53 (1989), the court agreed with plaintiff's position that his claim in this action was independent from the dissolution case and reasoned that, after the dissolution judgment was entered, the parties were free to agree to modify the property award under that judgment.

Defendant then filed a motion for summary judgment, asserting on various theories that the alleged settlement agreement is not enforceable. Defendant's primary contention was that, in pursuing the appeal of the dissolution judgment, plaintiff abandoned any right to enforce the alleged settlement agreement. The court granted defendant's motion for summary judgment, explaining that

"had there been a settlement, [plaintiff] took actions that are inconsistent with it, and I don't believe that's a waiver.

I believe that is an acknowledgment that there was not, in fact, a settlement.

"It would be, by analogy, an agreement much like [the agreement at issue in *Bafico v. Southern Pac. Co.*, 244 Or 341, 417 P2d 392 (1966)], that says, 'I won't sue you,' then to go ahead and sue you is inconsistent with the claim of settlement."

On appeal, plaintiff assigns error to the granting of defendant's motion for summary judgment. Defendant asserts multiple alternative grounds for affirmance. As a cross-assignment of error, defendant contends that the trial court should have granted her motion to dismiss the action.

■    We first consider defendant's cross-assignment of error. Defendant contends that the trial court erred in denying her motion to dismiss because the enforcement of the alleged settlement agreement required the approval of the dissolution court. We review the trial court's ruling on the motion to dismiss for errors of law, giving plaintiff the benefit of all well-pleaded facts and all reasonable inferences that may be drawn from them. *Granewich v. Harding*, 329 Or 47, 51, 985 P2d 788 (1999).

■    If the alleged agreement had effected either a settlement of the dissolution action itself or a modification of the dissolution judgment under ORS 107.135 (2001), then defendant would be correct in asserting that the trial court had to approve the settlement in the dissolution case.[1] Plaintiff

---

[1] ORS 107.135 (2001) provides, in part:

"(1) The court may at any time after a decree of annulment or dissolution of marriage or of separation is granted, upon the motion of either party and after service of notice on the other party in the manner provided by ORCP 7, and after notice to the Division of Child Support when required pursuant to subsection (8) of this section:

"(a) Set aside, alter or modify so much of the decree as may provide for the appointment and duties of trustees, for the custody, parenting time, visitation, support and welfare of the minor children and the children attending school, as defined in ORS 107.108, including any provisions for health or life insurance, or for the support of a party or for life insurance under ORS 107.820 or 107.830;

"(b) Make an order, after service of notice to the other party, providing for the future custody, support and welfare of minor children residing in the state, who, at the time the decree was given, were not residents of the state, or were unknown to the court or were erroneously omitted from the decree;

"(c) Terminate a duty of support toward any minor child who has become self-supporting, emancipated or married;

asserts, however, that the property award in the dissolution judgment was, upon entry, effective for all purposes and that the parties could negotiate and settle their ongoing disputes without court approval. He argues that his claim for breach of contract could be asserted in an independent action.

■■ We agree with plaintiff. A predissolution property division settlement requires the approval of the dissolution court. *Wrona and Wrona*, 66 Or App 690, 674 P2d 1213 (1984). However, except as provided in ORS 107.135(1)(e) (2001), after the entry of a dissolution judgment, a court lacks authority to modify a property award in a dissolution action. *Spady*, 307 Or at 488-89. The parties, though, are not similarly constrained. After the entry of a dissolution judgment, and even pending appeal, the parties are free to negotiate and agree to a modification or settlement of the property division between themselves. *Id.* at 488. We are satisfied that plaintiff's complaint alleges such an agreement.

The complaint alleges, in part:

"4. *For more than three years, plaintiff and defendant have been involved in a dispute over the division of assets under a divorce decree.* The judgment of divorce, entered on January 20, 1998, provided for division of the parties' assets but did not provide for spousal support. *Both parties appealed from the property division portion of this judgment*, and the case was argued to the Oregon Court of Appeals on December 15, 1999. More than nine months later, the appellate court had yet to rule, although the parties expected a decision at any time.

---

"(d) Notwithstanding section 84 (2), chapter 827, Oregon Laws 1973, and after service of notice on the child in the manner provided by law for service of a summons, suspend future support for any child who has ceased to be a child attending school as defined in ORS 107.108; and

"(e) Set aside, alter or modify so much of the decree as may provide for a property award based on the enhanced earning capacity of a party that was awarded before October 23, 1999. A property award may be set aside, altered or modified under this paragraph:

"(A) When the person with the enhanced earning capacity makes a good faith career change that results in less income;

"(B) When the income of the person with the enhanced earning capacity decreases due to circumstances beyond the person's control; or

"(C) Under such other circumstances as the court deems just and proper."

"5. Settlement discussion between counsel representing the parties continued throughout the appeal process with the differences between the two sides gradually narrowing. During a telephone conference on the evening of October 3, 2000, the dispute was resolved when an attorney representing the defendant reached agreement with an attorney representing the plaintiff on the following mutually acceptable terms: (a) plaintiff would make a $17 million cash payment to the defendant, with interest accruing at 9% from May 15, 2000 until the date of payment; (b) plaintiff would deliver to the defendant one-half of the assets of Bidwell Capital LLC and other personal and real property as ordered under the divorce decree; (c) *spousal support of $17,500 per month would continue until these terms were completed*; (d) *the parties would modify the existing judgment and security agreement to reflect their settlement*; and (e) *the parties would dismiss their pending appeals*. No conditions or stipulations precedent or subsequent were attached to this oral settlement agreement, although plaintiff's attorney did ask counsel for the defendant to send him a confirming letter. Plaintiff's attorney also asked opposing counsel to see if the defendant might be willing to give a credit for the plaintiff's spousal support payments, although he made clear his request was not a condition to the plaintiff's acceptance of the settlement terms.

"6. Counsel for the defendant had actual or apparent authority to enter into the oral settlement agreement described in the preceding paragraph.

"7. Following the telephone conversation, counsel for the defendant drafted a letter to confirm the terms of the oral settlement agreement (the 'Settlement Confirmation Letter') * * *. In relevant part, the Settlement Confirmation Letter states:

" 'This confirms that [defendant] will enter into a global settlement between the parties * * *.'

"* * * * *

"8. On October 4, 2000, the Court of Appeals issued a decision that affirmed the property distribution under the trial court's divorce decree. The defendant's attorney denied the existence of the oral settlement agreement made on October 3, 2000, and did not send the Settlement Confirmation Letter to plaintiff's attorney for approximately six weeks, despite repeated requests by plaintiff's attorney to

do so sooner. Plaintiff has attempted to tender performance pursuant to the settlement agreement, but his tender has been refused."

(Emphasis added.)

Viewing the allegations of the complaint in the light most favorable to plaintiff, we infer that the alleged settlement involved only the property award provisions of the dissolution judgment. Although enforcement of the settlement agreement would have required a "modification" of the dissolution judgment to the extent that the judgment required a continuation of spousal support pending appeal, as plaintiff points out, the agreement would not have modified the spousal support provision in the sense contemplated by ORS 107.135 (2001). Rather, the dissolution judgment provided only for spousal support pending appeal. The support order was scheduled by its terms to terminate automatically upon the conclusion of the appeal, and the dismissal of the appeal was a component of the alleged settlement agreement. Thus, it is possible to infer from the allegations of the complaint that the settlement agreement would not have required a modification of the judgment itself and that, accordingly, it did not require court approval in the dissolution action under ORS 107.135(1) (2001). We conclude that the trial court did not err in denying defendant's motion to dismiss the claim under ORCP 21 A(8).

We turn to plaintiff's assignment of error on appeal. Plaintiff asserts that the trial court erred in concluding on summary judgment that his conduct after the making of the alleged settlement agreement was, as a matter of law, inconsistent with the existence of such an agreement. In reviewing the summary judgment decision, we consider whether there were genuine issues of material fact and whether defendant was entitled to judgment as a matter of law. ORCP 47 C.

■ As a threshold matter, the parties dispute at length whether plaintiff was required, as a condition of enforcing the alleged settlement agreement, to advise this court of its existence during the pendency of his appeal from the dissolution judgment. According to defendant, if plaintiff intended to assert that the parties' dispute had been settled, he was required to notify this court of the existence of the settlement

agreement, to seek its enforcement before this court, and to dismiss the appeal. Plaintiff responds that, after defendant repudiated the agreement, it would have been fruitless to bring the matter to our attention in light of then-existing case law indicating that the court would not determine the enforceability of settlements reached pending appeal. *Guinasso v. Pacific First Federal*, 95 Or App 233, 769 P2d 212, *rev den*, 307 Or 658 (1989) ("Whether there is an enforceable contract is an issue that must be raised initially in another forum.").

In *Guinasso*, the parties reached a settlement agreement regarding the payment of attorney fees on appeal at approximately the same time that this court rendered its decision denying the plaintiffs' petition for attorney fees. The defendants then repudiated the agreement. The plaintiffs asked this court to vacate its order and enforce the settlement agreement. We declined to do so, stating that "we do not enforce settlements; we desist from deciding cases when settlements are reached." *Guinasso*, 95 Or App at 236. We explained that "[t]he agreement may be independently enforceable in a contract action, but its enforcement is not ancillary or incidental to our ruling on an appeal or a petition for attorney fees." *Id.* Assuming our adherence to our decision in *Guinasso*, plaintiff is correct that he likely could not have sought enforcement of the alleged settlement agreement before this court on appeal from the dissolution judgment.

However, after the appellate judgment was entered in the appeal from the dissolution judgment in this case, we decided *Reich and Reich*, 176 Or App 442, 32 P3d 904 (2001). Retreating "slightly" from *Guinasso*, we held in *Reich* that "[t]his court must decide in the first instance whether to enforce" a settlement agreement entered into while a case is pending on appeal, to the extent that the agreement provides for the dismissal of the appeal. *Reich*, 176 Or App at 451. Defendant argues that, because the alleged settlement agreement in the dissolution case provided for dismissal of plaintiff's appeal, under *Reich*, plaintiff was required to seek enforcement of the alleged settlement agreement before this court. We disagree. In evaluating plaintiff's decision in 1999 to pursue his appeal without notifying this court of the alleged settlement agreement, we should not consider an opinion that altered the controlling law some two years later.

Under the law as it then existed, plaintiff made a legally permissible choice not to seek enforcement of the alleged settlement agreement in this court.

Defendant contends, nonetheless, that under ORAP 8.45,[2] plaintiff was obligated to notify the court of the "probable" mootness of the appeal. If the parties had shared the view that they had settled their dispute, the appeal would have been moot. *First Commerce of America v. Nimbus Center Assoc.*, 329 Or 199, 986 P2d 556 (1999); *Gritter v. AFSD*, 183 Or App 578, 53 P3d 469 (2002). However, because defendant refused to acknowledge the settlement, and in light of the then-applicable holding in *Guinasso*, plaintiff reasonably could have concluded that the appeal was not "probably moot."

■ The question remains whether plaintiff's decision to proceed with the appeal after the settlement allegedly was reached nonetheless effected an abandonment of his right to seek enforcement of the agreement in this action. Plaintiff contends that a triable issue of fact exists as to whether he abandoned the settlement agreement because he averred in his affidavit opposing summary judgment that he never willingly or intentionally relinquished his rights under the agreement. Plaintiff asserts, further, that under Oregon law, he was entitled to pursue alternative and even inconsistent remedies, and that, in light of defendant's repudiation of the agreement, he had no choice but to first pursue his appeal to its ultimate conclusion, and then, if necessary, pursue his rights under the settlement agreement. According to plaintiff, while the appeal was pending, he had no forum in which to seek enforcement of the settlement agreement, because jurisdiction of the case was in this court, and, under our decision in *Guinasso*, we would not have determined that issue nor, according to his attorney's advice, would we have stayed

---

[2] ORAP 8.45 provides, in part:

"Except as to facts the disclosure of which is barred by the attorney-client privilege, when a party becomes aware of facts that probably render an appeal moot, that party shall provide notice of the facts to the court and to the other party or parties to the appeal, and may file a motion to dismiss the appeal."

(Footnote omitted.) A footnote to the rule lists "settlement of a civil case" as an example of a fact that probably renders an appeal moot.

our decision on appeal pending resolution of the dispute concerning the enforcement of the agreement. Further, plaintiff argues that, if he had dismissed the appeal, he would have been without a remedy if the court determined in a later action that the parties had not made an enforceable settlement agreement.

Defendant responds that plaintiff could not both pursue the appeal and seek to enforce an alleged settlement agreement that required him to dismiss his appeal. As defendant sees things, plaintiff did not merely choose an alternate remedy but, rather, he elected between two substantive rights that could not coexist. Defendant relies on *Bafico v. Southern Pacific*, 244 Or 341, 417 P2d 392 (1966). In that case, the plaintiff was injured in an automobile accident while working for the defendant. In exchange for the plaintiff's promise not to sue, the defendant agreed to pay the plaintiff's damages. The plaintiff then sued a third party, Dad's Root Beer (Dad's), for the injuries that he suffered in the accident. The plaintiff settled his claim against Dad's in exchange for a release from liability. The plaintiff thereafter demanded that the defendant pay his damages. The defendant asserted that its performance under its agreement with the plaintiff was excused by the release agreement between the plaintiff and Dad's. The plaintiff then brought a tort action against the defendant in federal court, but he did not assert in that action a claim for breach of the settlement agreement. The federal court held that the defendant was protected by the release agreement, and it dismissed the plaintiff's tort claim.

The plaintiff later filed a second action against the defendant in state court to enforce the settlement agreement. The trial court dismissed the action. The Supreme Court affirmed. It held that, in pursuing his tort claim against the defendant, the plaintiff had "effectively abandoned" the settlement agreement, which had, as its sole consideration for the promise to pay damages, the plaintiff's agreement that he would refrain from maintaining a tort action against the defendant for those damages. *Bafico*, 244 Or at 345.

The plaintiff in *Bafico* had argued that his federal court action merely was an abortive attempt to pursue an

alternative remedy for the defendant's repudiation of the settlement agreement. The court disagreed:

> "Plaintiff relies upon *Ladd v. General Insurance Co.*, 236 Or 260, 387 P2d 572 (1964) as authority for his position that the pursuit of an abortive alternative remedy is not a bar to another action seeking the same relief. The *Ladd* case and this case are markedly distinguishable on both factual grounds and applicable legal theory. The *Ladd* case involved only the method of enforcement of an agreement for determination of amounts owing by the insurer under the provisions of a policy and did not involve an obligation not to sue on the policy. Plaintiff's choice in the action now before this court was not between remedies, but between substantive rights that could not co-exist.
>
> "Plaintiff argues that the action in the Federal Court did not provide an efficacious remedy simply because he was not successful there. This requires no comment. The fact of the matter is that plaintiff did submit his tort claim to that court on its merits. The successful defense therein that he had acknowledged full compensation for his damage by the release given to [Dad's] does not alter such fact."

*Bafico*, 244 Or at 346.[3]

Plaintiff attempts to distinguish *Bafico* from the circumstances here. He argues:

> "Bafico chose not to assert alternative claims for relief, forgoing the opportunity to ask the court to enforce the settlement agreement or, alternatively, to find against [the defendant] on his tort claims. *See Arter v. Spathas*, 98 Or App 362, 366-67, 779 P2d 1066 (1989) ('The doctrine of election between inconsistent remedies does not require an election until the matter has gone to judgment. A party need only choose between or among inconsistent remedies, not inconsistent claims or theories of recovery. ORCP 16 C

---

[3] A plaintiff who has two or more remedies on the same set of facts may, after pursuing one of those remedies to a judgment on the merits, be precluded from pursuing the others. *Ladd*, 236 Or at 264. "When enforced, the rule forbids subsequent litigation, either to enhance a meager victory won in the first effort or to rehabilitate a defeat suffered there." *Id.* The election of remedies doctrine is inapplicable here because, like the claims in *Bafico*, plaintiff's appeal from the dissolution judgment and his claim for enforcement of the settlement agreement were distinct and independent from each other.

specifically allows inconsistent claims to be pleaded and tried.') (citations omitted). This choice was unavailable to [plaintiff] under the procedural posture of this case because his appeal was pending in this [c]ourt—a forum in which [plaintiff] could not have pursued alternate remedies. [Plaintiff] could not have sued [defendant] to enforce the [alleged settlement agreement] and, alternatively, urged his appeal. Instead, [plaintiff] maintained his appeal while simultaneously suing [defendant] to compel her performance in another forum—the only choice available to him under *Guinasso*."

We do not read *Bafico* as narrowly as plaintiff does. Although the decision appears to employ multiple strands of reasoning, its ultimate holding is not that the plaintiff could have brought inconsistent claims in a single action but, rather, that the plaintiff's assertion of the federal tort claim was so repugnant to the settlement agreement on which he relied that the assertion of the former claim caused the consideration for the agreement to fail.

We acknowledge two imperfect seams in the reasoning of *Bafico*. First, it does not fit neatly with the modern procedural rule, embodied in ORCP 16 C, that parties generally may pursue inconsistent claims, at least in a single action. *See, e.g., Davis v. Tyee Industries, Inc.*, 295 Or 467, 479 n 9, 668 P2d 1186 (1983).

Second, it suggests that, in the face of a repudiation of a contract, the aggrieved party cannot engage in conduct that otherwise would violate his or her own return obligation under the contract without being deemed to have abandoned the contract. There are circumstances in which courts have held that a repudiating party cannot take advantage of the aggrieved party's responsive breach and thereby escape liability for the repudiation. *See, e.g., Gamble et ux. v. Beahm*, 198 Or 537, 546, 257 P2d 882 (1953) ("[O]ne in default may not ordinarily enforce the terms of a contract against another or recover for the breach of a contract when in default[.]"); *see also Title & Trust Co. v. Durkheimer Co.*, 155 Or 427, 448, 63 P2d 909 (1936) ("One who is himself guilty of breach, or who has abandoned the contract by repudiation, cannot rescind upon breach by the other party[.]"). It is not obvious why the

court failed to discuss, if not apply, that principle in *Bafico*.[4] It might well be, as defendant argues, that the court regarded the plaintiff's conduct in pursuing the federal tort claim to be so inconsistent with the terms of the alleged settlement agreement as to create an implicit abandonment of the settlement.

In our view, though, the better reasoning was applied by the Colorado Court of Appeals in *Tripp v. Parga*, 847 P2d 165 (Colo App 1992). That case also involved an action to enforce a settlement agreement, and its facts are, in many respects, similar to the facts here. In February 1983, the defendant obtained a money judgment against the plaintiff for $437,000. After the judgment was entered, the defendant's attorney offered to settle the case for $250,000 if the plaintiff would accept the offer by February 28 and deliver that sum to the defendant's attorney's office by March 2. The plaintiff's attorney accepted the offer by telephone on February 28 and, within the hour, hand delivered a letter to that effect to the defendant's attorney's office. Within minutes after delivery of the letter, the defendant's attorney telephoned the plaintiff's attorney and left a message that

---

[4] The Nebraska Supreme Court followed the reasoning of *Bafico* in *Reifschneider v. Nebraska Methodist Hospital*, 212 Neb 91, 321 NW2d 445 (1982). There, the plaintiff sought specific performance of a settlement agreement while at the same time maintaining a tort action against the defendant for personal injuries. As plaintiff does here, the plaintiff in *Reifschneider* argued that the question whether her pursuit of the tort action effected an abandonment of her right to enforce the settlement agreement was one of fact that could not be resolved on summary judgment. The Nebraska court disagreed:

" 'Obviously the contract cannot, at one and the same time, be both in force and not in force. The wronged party has the *right* to choose which it shall be, but he also has the corresponding *duty* of making such choice .... Where the wronged party has elected to terminate the contract, he cannot subsequently maintain a suit for specific performance thereof.' * * * As to the matter of the plaintiff's intent to abandon the contract, 'we must judge the intent of the parties by what they did and said, rather than by some secret, undisclosed intention they may have had ....'

"The pleadings and exhibits presented to the trial court on the motion for summary judgment demonstrated that the plaintiff had abandoned the settlement agreement and caused a failure of consideration for it by filing the damage action. The record sustains the trial court's finding of abandonment as a matter of law, and the summary judgment in favor of the defendant."

*Reifschneider*, 212 Neb at 95, 321 NW2d at 447-48 (internal citations omitted; emphasis in original; some ellipses in original).

the offer was revoked. On March 2, the plaintiff and his attorney attempted to hand a certified check for $250,000 to the defendant's attorney pursuant to the terms of the offer, but the tender was refused. On March 3, the plaintiff's attorney notified the defendant's counsel that he considered the attempted revocation to be ineffective and would institute a breach of contract action if the settlement did not proceed.

Shortly thereafter, the plaintiff filed a notice of appeal from the money judgment. In December 1985, the plaintiff filed in the appellate court a motion "for limited remand" to allow him to determine the validity of the settlement before the trial court. In his motion, the plaintiff explained that he intended to sue to enforce the agreement, but "would continue to protect his client's rights in [this case] in the meantime." The Court of Appeals denied the motion for limited remand, denied a stay of the appeal, and affirmed the underlying judgment. The court remanded the case to the trial court to determine the interest obligation on the judgment.

On remand, the plaintiff filed a motion to enforce the settlement agreement, which the trial court denied. The plaintiff again appealed. The Court of Appeals reversed and ordered reinstatement of the plaintiff's action for specific performance.

After a bench trial, the trial court determined that a settlement contract had been formed in February 1983 and that the plaintiff had neither waived nor abandoned his rights under the settlement agreement. The court awarded $235,000 to the plaintiff, representing the difference between the money judgment balance and the $250,000 settlement amount. The defendant appealed, and the Court of Appeals affirmed.

As defendant does here, the defendant in *Tripp* argued that, by pursuing the appeal, the plaintiff had elected to disaffirm rather than enforce the settlement agreement and, thus, waived or abandoned his right to its enforcement. The court disagreed:

" 'A [party] is entitled to take all legal steps to protect his interests and does not waive or abandon any course of

action open to him in the absence of an intentional relinquishment of a known right.' *Judd v. Queen City Metro*, 31 Ohio App 3d 88, 508 NE 2d 1034 (1986).

"[The defendant's] assertions to the contrary notwithstanding, [the plaintiff's] action in filing an appeal, in and of itself, was not inconsistent with the assertion of a settlement agreement. Here, after [the plaintiff] accepted [the defendant's] offer to settle, [the defendant] refused to accept [the plaintiff's] tendered $250,000, repudiated the agreement, and refused to perform. Thus, at the time [the plaintiff] filed for appeal, the validity of the settlement agreement was in dispute. In such a circumstance, there is no 'known' right to waive or abandon.

"* * * * *

"[The defendant] also contends that, because 'cessation of legal action' was part of the bargain, [the plaintiff], by proceeding with an appeal became unable to perform under the settlement agreement. We do not agree. Contrary to [the defendant's] assertion, if [the plaintiff] had been able to have the validity of the settlement agreement determined before the appeal was decided—an effort made numerous times by [the plaintiff] and successfully resisted each time by [the defendant]—the appeal would have been rendered moot."

*Tripp*, 847 P2d at 168 (some citations omitted).

Unlike the plaintiff in *Tripp*, plaintiff here did not attempt to enforce the settlement agreement with the assistance of the appellate court while his appeal was pending. Based on *Guinasso*, though, that alternative probably was not available to him. Accordingly, plaintiff's dilemma in this case was similar to the one confronting the plaintiff in *Tripp*. Unable to obtain more expeditious enforcement of the settlement agreement, he chose simultaneously to pursue his appeal from the underlying judgment and an independent action to enforce the agreement. Under such circumstances, there is much to be said for the court's conclusion in *Tripp* that the plaintiff's conduct in pursuing the appeal did not, as a matter of law, effect an abandonment of the settlement agreement. However, *Bafico* has not been overruled by the Supreme Court and, to the extent that its holding is applicable here, we are obliged to follow it.

Thus, as in *Bafico*, we conclude that plaintiff abandoned the alleged settlement agreement by maintaining a legal position that deprived defendant of the consideration for her return obligation. The consideration that plaintiff gave for defendant's return obligation was the dismissal of his appeal from the dissolution judgment. When plaintiff chose to pursue the appeal to final judgment, that consideration failed and defendant's return promise became a nullity. *Bafico*, 244 Or at 345.

Plaintiff's offers to make payment of the alleged settlement amount and his continued warnings to defendant that, in pursuing his appeal, he did not intend to relinquish his right to enforce the alleged settlement agreement did not counter the effect of his pursuit of the appeal to final judgment. Under the circumstances, plaintiff abandoned the alleged settlement agreement when defendant repudiated it and plaintiff acted inconsistently with its terms. The trial court did not err in granting defendant's motion for summary judgment.

Affirmed.