Argued and submitted December 3, 2003, affirmed January 19, petition for review
denied April 26, 2005 (338 Or 488)

Scott COOK,
*Appellant,*

*v.*

STATE OF OREGON,
Barry Lambert, and Gregg Dal Ponte,
*Respondents,*

*and*

Bruce WARNER
and Steve Gallier,
*Defendants.*

01 CV 0193; A117618

104 P3d 1153

Roger Gould argued the cause for appellant. With him on the reply brief were Adam Gould and Roger Gould, P.C.

Erika L. Hadlock, Assistant Attorney General, argued the cause for respondents. With her on the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Janet A. Metcalf, Assistant Attorney General.

Before Haselton, Presiding Judge, and Linder and Ortega, Judges.

ORTEGA, J.

## ORTEGA, J.

Plaintiff appeals from a judgment dismissing his claims for alleged violations of his federal constitutional rights to due process and equal protection and his rights under the federal Rehabilitation Act of 1973 and Title II of the Americans with Disabilities Act (ADA), as well as a federal retaliation claim and a state tort claim for intentional infliction of emotional distress (IIED). At oral argument, plaintiff's counsel conceded, and we agree, that all of plaintiff's claims, except his claim for retaliation, are necessarily premised on the assumption that the state employees involved in this case applied an erroneous interpretation of Oregon statutes and regulations regarding the need for amputees to wear prosthetic devices. Because we reject plaintiff's premise, we affirm the trial court's judgment dismissing all of those claims.[1] We likewise affirm the judgment on plaintiff's retaliation claim without written discussion.

The parties agree on the following facts. Plaintiff is a truck driver whose left arm was amputated above the elbow when he was a child. Plaintiff has not held an Oregon Commercial Driver License (CDL) since 1994, but he drove a log truck commercially in Oregon off and on until at least January 2001. According to state officials, plaintiff's amputation disqualifies him from obtaining a CDL in Oregon unless he receives a "waiver of physical disqualification," which he can obtain only by wearing a prosthetic device so that he can demonstrate gripping ability with both upper limbs. Plaintiff disputes that such a requirement exists, refuses to wear a prosthesis, and has not applied for either a CDL or a waiver.

In March 2000, defendant Barry Lampert, a motor carrier enforcement officer with the Oregon Department of Transportation (ODOT), cited plaintiff for driving without a waiver. A judge later found plaintiff not guilty of that offense, stating that he was giving plaintiff a "break" but encouraging

---

[1] The state contends that it enjoys immunity from plaintiff's ADA and Rehabilitation Act claims; such immunity was the basis for the trial court's dismissal of those claims. Because of our determination that those claims are without legal foundation, we need not address the state's arguments regarding immunity.

plaintiff to obtain a waiver so that he would not receive further citations. In January 2001, plaintiff's truck was placed "out of service" for equipment violations, because plaintiff was driving commercially without a waiver, and because his regular (noncommercial) license was suspended. At various times, both Lampert and defendant Gregg Dal Ponte, deputy director of ODOT's Motor Carrier Transportation Division, informed plaintiff that the law required him to have a waiver in order to obtain a CDL and to wear a prosthesis in order to obtain that waiver.

Plaintiff brought this action against the state and several of its employees, asserting the following claims: (1) that Dal Ponte and Lampert deprived him of due process and equal protection by informing him "that he must have a prosthesis in order to obtain a waiver," entitling plaintiff to relief under 42 USC section 1983; (2) that Lampert directed issuance of the January 2001 out-of-service notice in retaliation for his having contested the March 2000 citation and for his having refused Lampert permission to place a portable weigh scale on plaintiff's property, entitling plaintiff to relief under 42 USC section 1983; (3) that defendants' "denial of [p]laintiff's right to operate his log truck, failure to follow their own regulations, and failure to grant him a waiver because he has only a portion of his left arm is a violation of the Rehabilitation Act of 1973"; (4) that defendants' actions violated Title II of the ADA; and (5) that Lampert directed issuance of the January 2001 out-of-service order and "misrepresented the requirements of [state] regulations" with the intent to inflict severe emotional distress on plaintiff. The trial court granted defendants' motions to dismiss the Rehabilitation Act and ADA claims and granted their motion for summary judgment as to plaintiff's section 1983 claim against Dal Ponte. Plaintiff then filed a third amended complaint asserting only his retaliation and IIED claims against the state and Lampert. Those claims went to trial, and the court granted defendants' motions for a directed verdict at the close of plaintiff's case. Plaintiff initiated this appeal challenging the judgment for defendants on all of his claims.

As indicated above, all of plaintiff's claims except for the claim for retaliation are premised on the assumption that state employees applied an erroneous interpretation of

Oregon statutes and regulations regarding the need for amputees to wear prosthetic devices. It follows that, if that assumption is incorrect, plaintiff's claims fail as a matter of law, and the trial court's rulings granting motions to dismiss, for summary judgment, and for a directed verdict as to those claims were correct. Because the relevant facts are undisputed, we review for errors of law[2] and affirm.

We begin with ORS chapter 807, which sets forth the requirements for driving privileges, licenses, and permits. ORS 807.040 imposes certain requirements for obtaining a CDL, including submission of "the report of a medical examination that establishes, *to the satisfaction of* [*ODOT*], that the applicant meets the medical requirements for the particular class of license." ORS 807.040(7) (emphasis added). The statute further provides:

> "[ODOT], by rule, shall establish medical requirements for purposes of this subsection. The medical requirements established under this subsection may include *any requirements the department determines are necessary for the safe operation of vehicles* permitted to be operated under the class of license for which the requirements are established."

*Id.* (emphasis added). Thus, ORS 807.040(7) authorizes ODOT to establish medical requirements for all commercial drivers. Commercial drivers demonstrate that they meet those requirements by obtaining medical certificates that are renewed every two years. OAR 735-060-0150.

Oregon statutes also contemplate that some disabled people will not be qualified to drive, either commercially or otherwise. *See* ORS 807.060(6) (a person is not eligible for any driver's license if ODOT "reasonably believes [that the person] has a physical or mental disability or disease serving to prevent the person from exercising reasonable and ordinary control over a motor vehicle while operating it upon the highways"). However, an individual whose disability might otherwise disqualify him or her from driving under ORS 807.060(6) may establish eligibility for a license if he or she "personally demonstrat[es] to the satisfaction of [ODOT] that

---

[2] *See Bidwell v. Baker,* 193 Or App 657, 661, 664, 91 P3d 793 (2004) (ruling on motions to dismiss and for summary judgment); *Checkley v. Boyd,* 170 Or App 721, 738, 14 P3d 81 (2000) (ruling on a motion for a directed verdict).

notwithstanding the disease or disability the person is qualified to safely operate a motor vehicle." ORS 807.090(1)(a). ODOT likewise is authorized to require the person to take "[a]ny * * * examination or test, including demonstrations, that [ODOT] determines may be necessary to assist the department in establishing whether the applicant is eligible for a license under ORS 807.060 or whether the applicant is fit to operate a motor vehicle safely on the highways of this state." ORS 807.070(4).

The fact that a disabled person is able to demonstrate safe driving technique on the day of the driving examination does not always end the inquiry. When ODOT nevertheless reasonably believes that a disability may interfere with a person's ability to drive safely, it may require the person to obtain a certificate of disability from the State Health Officer in addition to demonstrating to ODOT the ability to drive. ORS 807.090(1)(b). ODOT thereafter may require the person to reestablish eligibility at regular intervals. ORS 807.090(3).

To summarize, Oregon statutes authorize ODOT to confirm the ability of commercial drivers to drive safely by two means. First, ODOT may adopt rules setting forth medical requirements that all commercial drivers must meet. ORS 807.040(7). Second, ODOT may require any disabled driver to demonstrate to ODOT's satisfaction that, notwithstanding the disability, the person is qualified to safely operate a motor vehicle and, where appropriate, to obtain a certificate of eligibility from the State Health Officer. ORS 807.090(1).

ODOT's administrative rules implement those statutory provisions, in large part, by incorporating standards developed by the United States Department of Transportation. OAR 735-060-0140(1) provides, in pertinent part:

"The Driver and Motor Vehicle Services Division of the Department of Transportation (DMV) adopts the United States Department of Transportation standards pertaining to physical qualifications for drivers of commercial motor vehicles. These standards are contained in **Title 49, Chapter III, Sections 391.41 through 391.49** of the **Federal Motor Carrier Safety Regulations**."

(Boldface in original.) *See also* OAR 740-100-0010 (adopting provisions of Title 49 of the Code of Federal Regulations, Part 391, for carriers conducting interstate commerce in Oregon).

The federal regulations provide that a person with a limb amputation is not physically qualified to drive a commercial motor vehicle unless the person "has been granted a skill performance evaluation [SPE] certificate pursuant to [49 CFR] § 391.49." 49 CFR § 391.41(b)(1) (2003). To obtain the SPE certificate, the person must provide, among other things, a medical examiner's statement establishing that "the applicant is capable of demonstrating precision prehension (*e.g.*, manipulating knobs and switches) and power grasp prehension (*e.g.*, holding and maneuvering the steer-[f]ing wheel) with each upper limb separately." 49 CFR § 391.49(d)(3)(i)(B). That requirement does not apply to "an individual who was granted a waiver, absent a prosthetic device, prior to the publication of this amendment."[3] *Id.*

Title 49 of the Code of Federal Regulations, Part 391, also contains advisory criteria related to the regulations that confirm the implication in the regulations themselves that a person with an amputation is expected to use a prosthetic device when driving commercially, unless the vehicle being driven has been modified to accommodate the disability:

"A person who suffers loss of a foot, leg, hand or arm * * * is subject to the [SPE] Certification Program pursuant to section 391.49, assuming the person is otherwise qualified.

"* * * The SPE Certification Program * * * was designed to allow persons with the loss of a foot or limb * * * to qualify under the Federal Motor Carrier Safety Regulations (FMCSRs) *by use of prosthetic devices or equipment modifications* which enable them to safely operate a commercial motor vehicle."

49 CFR § 391.43 at 1052 (emphasis added). Even with such aids, the advisory criteria acknowledge that "risks are still present" and accordingly provide that "restrictions may be included on individual SPE certificates when a State Director

---

[3] Plaintiff does not claim that he was granted such a waiver.

for the [Federal Motor Carrier Safety Administration] determines they are necessary to be consistent with safety and public interest." *Id.*

Because ODOT has adopted those standards under OAR 735-060-0140(1), an Oregon driver with a limb amputation likewise can obtain a CDL only if the driver demonstrates "precision prehension (*e.g.,* manipulating knobs and switches) and power grasp prehension (*e.g.,* holding and maneuvering the steering wheel) with each upper limb separately." 49 CFR § 391.49(d)(3)(i)(B). Those skills may be accomplished through the use of a prosthetic device that allows the driver to perform those functions safely.

As plaintiff correctly points out, the Oregon rules provide that some disabled people may be able to obtain Oregon CDLs even if they do not qualify for SPE certification under federal law. ODOT "may" issue a CDL to a person who does not meet the federal standards if the person passes a driving test "demonstrating the ability to compensate for the condition to be waived" and ODOT receives a favorable medical recommendation from the State Health Division or the Public Utilities Commission. OAR 735-060-0140(2). Another rule similarly provides that, regardless of the federal standards, ODOT "may" issue a waiver to a disabled person who meets "the conditions established by [ODOT]" if ODOT receives a favorable medical recommendation from the State Health Division or a health care professional under contract to ODOT. OAR 740-100-0010(2)(d); *see* OAR 740-100-0140(3) (setting forth the procedure for obtaining an Oregon waiver).

Although plaintiff apparently concedes that he would not be able to get an SPE certificate under the federal rules without wearing a prosthetic device, he nevertheless contends that the waiver process contained in ORS 807.090, OAR 735-060-0140, and OAR 740-100-0140 must be interpreted to *require* ODOT to grant him a waiver independent of the federal standards. We disagree.

Neither the statute nor the rules require ODOT to issue a waiver under any particular circumstances; rather, they make the granting of a waiver discretionary. The statute authorizes ODOT to require disabled drivers to "demonstrat[e] to the satisfaction of [ODOT] that notwithstanding

the disease or disability the person is qualified to safely operate a motor vehicle," ORS 807.090(1)(a), and grants ODOT authority to adopt more stringent rules for the licensing of commercial drivers, ORS 807.040(1), (7). Likewise, the applicable rules provide that ODOT "may" issue a CDL to a person who meets the conditions laid out by ODOT and who receives a favorable medical recommendation. OAR 735-060-0140(2); OAR 740-100-0140.

Additionally, we defer to the agency's own reasonable interpretation of its rules, rather than substituting plaintiff's alternative interpretation. *See Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994) ("Where * * * the agency's plausible interpretation of its own rule cannot be shown either to be inconsistent with the wording of the rule itself, or with the rule's context, or with any other source of law, there is no basis on which this court can assert that the rule has been interpreted 'erroneously.' "). ODOT interprets its rules as (1) adopting federal standards regarding the licensing of disabled commercial drivers (*see* OAR 735-060-0140 and OAR 740-100-0010); (2) allowing, but not requiring ODOT to make exceptions that it deems appropriate (*see* OAR 735-060-0140(2) and OAR 740-100-0010(2)(d)); and (3) not providing an exception for people with upper limb amputations.

ODOT's interpretation of its own rules as permitting rather than requiring exceptions is at least plausible, given the use of the word "may" in each pertinent rule, and is not inconsistent with the wording of the rules, their context, or any other source of law. We defer to that interpretation and accordingly conclude that the ODOT officials gave plaintiff a correct interpretation of the applicable law. Because his claims rest on the premise that the officials applied an incorrect interpretation of the law, those claims fail as a matter of law.

Affirmed.