Argued and submitted June 28, 2005, judgment on claim for legal malpractice reversed and remanded; otherwise affirmed May 31, petition for review denied October 3, 2006 (341 Or 450)

Dwayne JOHNSON,
*Appellant,*

*v.*

Gary D. BABCOCK,
*Respondent.*

03C-13019; A124778

136 P3d 77

Marianne Dugan argued the cause for appellant. With her on the briefs was Facaros & Dugan.

Janet M. Schroer argued the cause for respondent. With her on the brief were Cecil A. Reniche-Smith and Hoffman, Hart & Wagner, LLP.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Ortega, Judge.

ORTEGA, J.

## ORTEGA, J.

Plaintiff appeals a judgment dismissing, on defendant's ORCP 21 A(8) motion, plaintiff's claim for legal malpractice. The issue on appeal is whether, in a malpractice action arising from legal representation in a criminal matter, a plaintiff sufficiently pleads the required element of harm when he alleges that, as a result of his attorney's negligence, he received a legally impermissible sentence and later obtained federal habeas corpus relief from that sentence but not from the underlying convictions. Our analysis of the issue is guided by the Supreme Court's decision in *Stevens v. Bispham*, 316 Or 221, 851 P2d 556 (1993). We conclude that plaintiff sufficiently pleaded that he was harmed by alleging that he received a legally impermissible sentence, served more of the sentence than was legally permissible, and successfully obtained relief from the sentence. Accordingly, we reverse and remand plaintiff's malpractice claim.

Because this appeal arises from a motion to dismiss, we accept factual allegations in the complaint and all reasonable inferences arising from those allegations as true and review for errors of law. *Bidwell v. Baker*, 193 Or App 657, 661, 91 P3d 793, *rev den*, 337 Or 547 (2004). We take our description of the facts from plaintiff's first amended complaint. Plaintiff hired defendant to represent him in certain criminal sentencing proceedings and related appeals. Defendant failed to assert to the sentencing court, both at sentencing and at resentencing after an appeal, that the "maximum permissible sentence" that could result from plaintiff's convictions was 80 months (six years and eight months). As a result, plaintiff received a 30-year sentence. After serving more than 80 months in prison, plaintiff obtained federal habeas corpus relief, based on a federal court's finding that defendant had provided ineffective assistance to plaintiff.

Plaintiff then brought this malpractice action against defendant. Defendant moved to dismiss under ORCP 21 A(8) for failure to state a claim. Applying the definition of "harm" articulated in *Stevens* for cases involving alleged attorney malpractice in criminal matters, the trial court

granted defendant's motion. Plaintiff appeals and assigns error to the trial court's dismissal of his malpractice claim.[1]

■ ■. We begin, as did the trial court, by examining *Stevens*. There, the plaintiff had, on the advice of the defendant, his attorney, pleaded no contest to various charges. After the plaintiff began serving his sentence, however, another person confessed to the crimes, and the plaintiff's convictions were vacated. 316 Or at 225-26. The plaintiff then filed a malpractice action, arguing that he would have been acquitted or the charges would have been dismissed if the defendant had provided adequate representation. The defendant moved for, and the trial court granted, summary judgment based on a statute of limitations defense. *Id.* at 226. To determine when the limitations period began to run, the *Stevens* court examined when the plaintiff suffered legal harm as a result of the defendant's actions. *Id.* at 228. The court held that,

> "in order for one convicted of a criminal offense to bring an action for professional negligence against that person's criminal defense counsel, the person must, in addition to alleging a duty, its breach, and causation, allege 'harm' in that the person has been exonerated of the criminal offense through reversal on direct appeal, through post-conviction relief proceedings, or otherwise."

*Id.* at 238.

Here, plaintiff argues that he was "exonerated" of his sentence when he obtained habeas corpus relief. We note that definitions of "exonerate" vary significantly. *See Stevens*, 316 Or at 256-61 (Unis, J., specially concurring) (identifying different possible meanings of "exoneration"); *Webster's Third New Int'l Dictionary* 797 (unabridged ed 2002) (defining "exonerate" as "to relieve esp. of a charge, obligation, or hardship ‹no reason for *exonerating* him from the ordinary duties of a citizen—O. W. Holmes †1935› : clear from accusation or blame : EXCULPATE ‹defendant was *exonerated* from any criminal offense›"); *Black's Law Dictionary* 616 (8th ed

---

[1] Plaintiff also assigns error to the trial court's dismissal of his claims for (1) breach of the duty of good faith and fair dealing and (2) reckless infliction of emotional distress. We affirm without discussion the trial court's decision as to those two claims.

2004) (defining "exonerate" as "**1.** To free from responsibility ‹exonerate from the payment of the debt›. Cf. EXCULPATE. **2.** To free from encumbrances ‹exonerate the property from the mortgage lien›"); *see also Black's* at 608 (defining "exculpate" as "[t]o free from blame or accusation. Cf. EXONERATE (1)"). Here, if "exonerate" is read in the sense of "exculpate," plaintiff was not exonerated: because his convictions still remain, he was not entirely freed from blame. However, if "exonerate" is read in the sense of freeing from an obligation or hardship, then plaintiff was exonerated in relation to the criminal offenses by being relieved of the burden of serving an unlawful sentence.

To clarify the meaning of exoneration—given the imprecision of the definitions as they apply in the context of sentencing, as distinct from conviction—we focus on the reasoning and analysis in *Stevens*, which leads us to the conclusion that the court's decision does not preclude malpractice claims in circumstances such as these.

The *Stevens* court explained three reasons for its holding. First, criminal defendants receive a wide range of procedural protections, arising from statutes and from the state and federal constitutions. 316 Or at 229-30. Given the elaborate and complete statutory and constitutional scheme, the recognition of legal harm in this context "should respect, and not hinder, the valid policy choices already made by the legislature" in regulating defense counsel's obligation to meet constitutional standards and in providing for vindication of those standards by means of post-judgment relief. *Id.* at 230. Accordingly, the court recognized that,

> "it would be inappropriate to treat victims of alleged negligence by defense counsel as having been 'harmed,' for the purpose of maintaining a legal malpractice action in cases like this, *unless they show that their counsel failed to meet the established standards in a way that would make postconviction relief appropriate.*"

*Id.* at 231 (emphasis added).

Second, allowing a malpractice claim to arise from a conviction that has not been overturned would allow relitigation of a matter that has already been settled through the

most rigorous legal process; *"while the conviction and sentence remain valid for all other purposes,* it is inappropriate to treat a complaining convicted offender as having been 'harmed' in a legally cognizable way by that conviction." *Id.* at 232 (emphasis added).

Third, relief should not be available to offenders who simply complain of "the failure of counsel to get a 'better deal' for the accused." *Id.* Only "reversal of a conviction, either outright or for a new trial[,]" gives rise to a malpractice action, because it is inappropriate "to treat a convicted offender as having been caused 'harm' in a legally cognizable way by any disposition of that person's case that was *legally permissible.*" *Id.* (emphasis added).

Here, those concerns weigh in favor of plaintiff's position. First, because plaintiff obtained post-judgment relief, recognizing his malpractice claim does not offend "the extensive statutory provisions already in place for the protection of convicted offenders[.]" *Id.* at 231. Indeed, it seems disrespectful of legislative choices to deny that plaintiff was harmed when he received a sentence that exceeded the legal maximum. Second, his sentence was mitigated through post-judgment relief; this is not a case where "the conviction *and sentence* remain valid for all other purposes[.]" *Id.* at 232 (emphasis added). Finally, plaintiff's claim is not founded on a quest for a "better deal." Contrary to the concern of the *Stevens* court regarding opening the doors to prisoners objecting to some "legally permissible" disposition, *id.*, here plaintiff received a sentence that was not legally permissible. On review of a motion to dismiss, we accept as true plaintiff's allegation that he properly faced a "maximum permissible sentence of 80 months" but, because of defendant's failings, received a sentence of 30 years and served more time than he would have had he been adequately represented. Thus framed, this case is about an unlawful sentence. An unlawful restraint of liberty can constitute harm, as we ordinarily understand that concept in a tort context.[2] *See, e.g., Hiber v.*

---

[2] Although the *Stevens* court cited cases from other jurisdictions requiring that a plaintiff in this type of malpractice action prove actual innocence, it considered its "own list of reasons to be better focused on the underlying theoretical considerations involved." 316 Or at 236. Accordingly, we rely on the Supreme Court's statement of policy reasons, not those of the cases cited. However, the weight of case law

*Creditors Collection Service*, 154 Or App 408, 413, 961 P2d 898, *rev den*, 327 Or 621 (1998) (noting that the gravamen of the tort of false imprisonment is the unlawful restraint of freedom of movement).

We acknowledge that some portions of *Stevens* suggest that a plaintiff must obtain relief from the conviction itself in order to bring a malpractice claim in circumstances such as these. For example, immediately before indicating that a plaintiff does not suffer " 'harm' in a legally cognizable way by any disposition of that person's case that was legally permissible[,]" the court said that a malpractice claim would be available only after "reversal of a conviction, either outright or for a new trial." 316 Or at 232. Taken in context, however, such statements do not foreclose plaintiff's claim in this case. *Stevens* dealt with the statute of limitations for a malpractice claim brought after the plaintiff's criminal convictions were vacated. Here, we address the legal sufficiency of a malpractice claim that is based on allegations that

---

in other jurisdictions does not foreclose allowing a claim such as plaintiff's. The majority of jurisdictions appear to hold that a plaintiff must demonstrate either success in obtaining post-conviction relief or actual innocence of the criminal charges. *See, e.g., Berringer v. Steele*, 133 Md App 442, 474-76, 758 A2d 574, 591-94 (2000) (collecting cases). However, we have not located any case applying an "actual innocence" standard to foreclose relief where the plaintiff's claim was specifically based on an unlawful sentence.

Indeed, in at least one jurisdiction that requires a plaintiff to prove his actual innocence, an exception has been drawn when, as here, the plaintiff received an unlawful sentence. *Powell v. Associated Counsel for Accused*, 131 Wash App 810, 129 P3d 831 (2006). In *Powell*, the plaintiff had pleaded guilty to a gross misdemeanor with a maximum sentence of one year, but was erroneously sentenced for a felony for 38.25 months; he eventually obtained relief and was released after 20 months of incarceration. Reversing the dismissal of the plaintiff's malpractice claim, the Washington Court of Appeals explained that post-conviction relief did not place the plaintiff, who had already served an excessive sentence, in the same position that he would have been if he had received competent representation in the initial proceedings. 129 P3d at 833. The usual requirement that a plaintiff show innocence had been justified as necessary to show that the alleged negligence of defense counsel, rather than the plaintiff's own criminal conduct, was the legal cause of the plaintiff's harm. *Id.* at 832-33 (discussing *Ang v. Martin*, 154 Wash 2d 477, 114 P3d 637 (2005)). However, the *Powell* court explained that where the plaintiff has served the maximum sentence for the crime he committed, there is no similar barrier to causation; "[t]he harm caused by [the plaintiff's] unlawful restraint was not the direct consequence of his own bad act." *Id.* at 833. Consistently with our own reasoning, the court also determined that the case did not present "a situation where the guilty criminal simply 'could have gotten a better deal.' [The plaintiff] was entitled to be lawfully sentenced." *Id.* (footnote omitted).

defendant's negligence caused plaintiff to receive an unlawful sentence. This case fits logically within the policy discussions and the exoneration framework established in *Stevens*. In these circumstances, where plaintiff alleges that he received a legally impermissible sentence, not merely a "bad deal," that he served more of the sentence than was legally permissible, and that he obtained post-judgment relief from the sentence, we conclude that plaintiff properly alleged harm.

Judgment on claim for legal malpractice reversed and remanded; otherwise affirmed.